# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| WALLACE WILKE and GEORGIA WILKE | § § § | PLAINTIFFS |
| v. | § § | CAUSE NO. 1:07cv465 LG-JMR |
| UNITED STATES OF AMERICA | § § | DEFENDANT |

## MEMORANDUM OPINION AND ORDER
## DENYING MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are the cross-motions for summary judgment filed by the parties in this medical malpractice case. The Defendant contends it is entitled to summary judgment because Plaintiffs have not submitted expert medical testimony supporting their negligence claim. Plaintiffs contend they are entitled to summary judgment because the Defendant has admitted to negligence in an Administrative Investigation Memorandum, and therefore no testimony from a medical expert is necessary. If expert medical testimony is required, Plaintiffs argue that testimony from a Registered Nurse and a Nursing Aide is sufficient to fulfil the statutory requirement. In the alternative, Plaintiffs contend that expert medical testimony is not necessary, because a lay person can readily comprehend Defendant's negligence. After due consideration of the parties' submissions and the relevant law, it is the Court's opinion that both Motions should be denied.

## DISCUSSION

The facts of this case are largely undisputed. In March 2004, Wallace Wilke was a patient at the VA Gulf Coast Health Care System facility in Biloxi, Mississippi. Wilke had undergone hip surgery and was recuperating when, on March 24 and again on March 25, Wilke fell. The next day, on March 26, while two nursing assistants were in the room, Wilke fell again.

The nursing assistants, however, failed to recognize that Wilke had been seriously injured, and he was simply helped into a wheelchair. Wilke rolled himself into the hall and told a Physician's Assistant that his leg hurt. The Physician's Assistant immediately recognized that Wilke had fractured his femur. Following Wilke's accident, the VA conducted an investigation where 15 witnesses were interviewed and the circumstances surrounding Wilke's fall were determined. Following the investigation, the VA issued An Administrative Investigation Memorandum in which it found that there were numerous errors on the VA's part that led to Wilke's fall and that his fall could have been prevented.

PLAINTIFFS' MEDICAL MALPRACTICE CLAIM AGAINST THE UNITED STATES:

The Federal Tort Claims Act is a limited waiver of sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 813 (1976). Liability may only be imposed on the United States, pursuant to the FTCA, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Since the alleged acts and omissions in this case occurred in Mississippi, the law of Mississippi is applicable. *See United States v. Muniz*, 374 U.S. 150, 153 (1963); *Rogers v. United States*, 187 F. Supp.2d 626, 634 (N.D. Miss. 2001).

Establishing a prima facie case of medical malpractice under Mississippi law generally requires a plaintiff to present expert testimony identifying and articulating the requisite standard of care, and establishing that the defendant failed to conform to the standard of care. *Cheeks v. Bio-Medical Applications, Inc.*, 908 So.2d 117, 120 (Miss. 2005). "In addition, [] the plaintiff must prove the [defendant's] noncompliance with the standard of care caused the plaintiff's injury, as well as proving [] the extent of the plaintiff's damages." *Id*. "Although this usually

means that the plaintiff must rely on [his] own expert testimony, Mississippi law also recognizes that a medical-malpractice plaintiff 'may utilize the defendant himself as a source of proof of the standard of care'" *Dickey v. Baptist Mem. Hosp. - North MS*, 146 F.3d 262, 265 (5th Cir. 1998) (quoting *Meena v. Wilburn*, 603 So. 2d 866, 870 n. 9 (Miss. 1992)). This is acceptable when the defendant testifies "to the standard in such a clear way that the plaintiff has little trouble demonstrating a deviation from that standard." *Id*.

### A. The Layman's Exception

The Plaintiffs first argue that expert medical testimony is not necessary in this case because the layman's exception applies. The layman's exception to the necessity of expert medical testimony provides that lay testimony in a medical malpractice case may be acceptable as to matters that are purely factual in nature or thought to be within the common knowledge of a lay person. *Smith v. Gilmore Mem'l Hosp., Inc.*, 952 So. 2d 177, 181 (¶14) (Miss. 2007). For example, failing to treat a patient who was bleeding profusely for over two hours in the emergency room from her ear, head, and nose is within the layman's exception. *Hammond v. Grissom*, 470 So. 2d 1049, 1054-55 (Miss. 1985). Expert testimony is not required to establish that this failure to treat breached a medical standard of care. *Id.* Additionally, the layman's exception applies to a case where a foreign object is left inside a patient without permission. *Sheffield v. Goodwin*, 740 So. 2d 854, 857 (¶13) (Miss. 1999).

The exception does not apply in this case because the standard of care is not a factual matter or within the knowledge of a lay person. Testimony from the nurse on duty at the time of Wilke's accident describes a fall prevention and assessment protocol performed on each patient at the time of admission, which takes a number of factors into account, including the patient's

age and medical condition. Ct. R. 109-8 p. 4-5. The nurse then has a number of fall prevention tools or methods to choose from, depending on the circumstances. *Id*. at 5. This testimony is confirmed by the findings of the panel investigating Wilke's fall. The panel found that "fall prevention is a concern of the Extended Care staff and some protocol has been instituted," but that the protocol was not well understood or implemented by the staff. Ct. R. 109-2 p. 8. In the Court's opinion, the adequacy of the fall prevention methods used by the Defendant in this instance implicate medical judgment and training. Activities that involve a medical professional's judgment require expert testimony to determine whether they failed to meet the required standard of care. *Smith*, 952 So. 2d at 181(Application of layman's exception to situations involving judgment calls made by professionals would be overly broad). *See also Lyons v. Biloxi H.M.A., Inc.*, 925 So. 2d 151, 155 (Miss. App. 2006). Consequently, the layman's exception does not apply to this case.

### B. The Defendant's Admission:

Plaintiffs next contend that the Defendant has admitted to negligence in the Administrative Investigation Memorandum, and therefore no testimony from a medical expert is necessary. Plaintiffs do not provide any legal support for this argument, and there is Mississippi precedent to the contrary. In *Hill v. Warden, M.D.*, 796 So. 2d 276 (Miss. App. 2001), the court found that even if the defendant doctor stated to the plaintiff that he had "made a mistake," that statement did not establish either a breach of the standard of care or the proximate cause between the medical procedure and the patient's death. *Hill*, 796 So. 2d at 280-81. Expert medical testimony was required in that case, even in the face of the doctor's admission. *Id.* The admission in this case is no different. The Defendant's Administrative Investigation

Memorandum makes admissions of fault regarding Wilke's injury, but it does not establish the standard of care or a breach of the standard. Therefore the Plaintiffs may not rely on the Memorandum, but must provide expert medical testimony to prove the elements of their medical malpractice cause of action.

    C. Expert Medical Testimony:

The Plaintiffs have not designated a medical doctor as an expert. They have instead designated the nurse who was a member of the investigatory panel, the nurse on duty at the time of Wilke's accident, and other, non-nurse members of the investigatory panel. The Defendant contends that this is not sufficient, because the standard of medical care related to the care of a geriatric patient who sustained a broken leg must be proven by the expert testimony of a medical doctor. However, in Mississippi, nurses "may certainly opine as to matters within the ambit of their practice area." *Wright v. Mariner Health Care, Inc.*, 2008 WL 2704034 (S.D. Miss. July 3, 2008). *See also Richardson*, 807 So. 2d at 1246 (Nurse allowed to testify concerning the appropriate standard of nursing care and the deviations from that standard). It appears from the evidence submitted to the Court that whether Wilke was properly evaluated for fall risk, and whether the proper precautions were in place, are matters within the ambit of the nurse's practice area.[1] Thus, the nurse designated by Plaintiffs may provide the necessary evidence of the appropriate standard of nursing care and the deviations from that standard.

"There is no magic form to which a plaintiff's supporting expert opinion must conform, so long as its import is apparent." *Kelley v. Frederic*, 573 So. 2d 1385, 1389 (Miss. 1990). The

---

[1] Nurse Amos testified that an exception was that a doctor had to approve the use of restraints, and that the VA tried not to use them. Ct. R. 108-8 p. 7, 14.

Court has reviewed the deposition testimony of nurses Amos and Conwill to find an articulated standard of care and breach of the standard. Nurse Amos testified that the precautions that could be taken for a person judged a low fall risk were: have a clean environment so there is nothing to trip on; set the bed in a low position; lock the bed; put the rails up (although this would be considered a restraint); patient given instructions not to get up without assistance; and lock wheelchairs as patient gets in and out. She testified that the precautions that could be taken for a person judged a high fall risk include: patient seated in a cardio lift chair near the nurses station; patient seated in a geri chair near the nurses station; patient placed in an alarmed bed; and restraints in rare cases, when approved by a doctor.

In regard to Wilke's care, Amos testified first that "[w]e have done everything we could to help him. It was two nurses in the room at the time, and Mr. Wilke was told not to get up. Everything was employed for him that could help him. We did the best we could with him." Ct. R. 108-8 p. 9. At the time of his fall, Wilke "had just come back again from one of the ortho hospitals, and they had placed him to bed, and we was fixing to - - they was getting patients up to go to lunch, to dinner, and all he had to do was wait his turn for them to help him up." *Id*. at 9-10. Later in her testimony, she agreed when counsel asked "[Wilke] being a high risk patient and none of the high risk precautions being in place, you would agree with me that at a minimum, some of those high risk precautions . . . should have been in place, wouldn't you?" *Id*. at 10. She also agreed that after Wilke's two previous falls, "additional interventions should have been put in place to prevent falls." *Id.* at 15. Nevertheless, no additional intervention methods were in place when Wilke fell the third time. *Id*. at 9. He was only verbally reminded not to get up on his own. *Id*. at 10.

Nurse Conwill was the registered nurse assigned to the administrative investigation of the Wilke incident. She explained the VA fall risk interventions as:

> the bed is locked. The bed is in the low position. A call light is within reach. The environment is clean. You instruct the patient not to wear, you know -- when they get out of bed, to make sure they have shoes or slippers on, not just their socks, that -- to have drinks or whatever at their bedside table to make sure they don't have to reach or – you know for anything. . . . Restraint is never -- a fall risk is never justification for restraints.

Ct. R. 108-5 p. 18. As to Mr. Wilke specifically, she testified that "The fall precautions that they initiated on Mr. Wilke are what we do for all patients at fall risk, whether they're high fall risk or low fall risk." *Id*. at 7. Later, counsel asked:

> Q: One of the other errors that you found led to the adverse event involving Mr. Wilke was that assessment of the effectiveness of the fall precautions utilized was not accomplished, and no additional fall precautions were instituted, even though patient Wilke fell on each of the two days prior to the date of the March 26, 2004 injury; correct?
>
> A: Correct.

*Id*. at 8. She agreed with counsel that Wilke should have been in an alarmed bed. *Id.* at 13. But she also testified that she did not believe his fall was preventable:

> Because the nursing staff was in the room with him when – you know, when he stood up, and she – you know, she stopped him from falling to the floor. And in my experience, that's not the first time something like that has happened. You can be, you know, in a patient's room and they'll do something and, you know, you can't prevent it from happening. I think that particular incident was not preventable.

*Id.* at 20.

Construing all of this evidence in the light most favorable to the Plaintiffs, the Court finds that it is sufficient to allow a jury to understand the standard of care for a patient at risk of falling, as well as the VA's deviation from that standard in caring for Mr. Wilke. Further, nurse

Conwill's testimony provides a causal connection between the breach of the standard of care and Wilke's injury, because she agreed that one reason for Wilke's injury was the insufficient fall intervention methods utilized.[2] The parties do not dispute that Wilke's broken femur resulted from his fall. Accordingly, the Court finds that each element of Plaintiffs' prima facie medical malpractice claim has been satisfied. The Defendant's Motion for Summary Judgment, based on the lack of medical expert testimony, will be denied.

Once a prima facie case is established by expert testimony, the plaintiff is entitled, not to judgment as a matter of law, but to go forward with his case and present the question of whether malpractice occurred to the jury. *McCaffrey v. Puckett, D.C.*, 784 So.2d 197, 206 (Miss. 2001). Therefore, the Plaintiffs' Motion for Partial Summary Judgment will be denied because it requests judgment on the issue of liability.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Plaintiffs' Motion for Partial Summary Judgment [67] is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment [97] is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 5th day of March, 2009.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Nurses "are not qualified to opine as to the proximate cause of medical conditions or disease processes." *Wright v. Mariner Health Care, Inc.*, 2008 WL 2704034, *2 (S.D. Miss. July 3, 2008) (citing *Richardson*, 807 So.2d at 1248). However, Wilke's fall is neither a medical condition nor a disease process, and therefore the Court will accept the expert testimony of the nurse linking the lack of fall prevention methods to Wilke's fall.